# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,

v.

DERRICK L. HARRIS,

                Defendant.

Case No. 17-CR-167-2-JPS

**ORDER**

## 1.  INTRODUCTION

On May 22, 2018, a superseding indictment charged Derrick L. Harris with retaliating against an informant and discharging a firearm during a crime of violence. (Docket #123). On June 15, 2018, the Court granted the defendant's motion to appoint Dr. Stephen A. Batzer ("Dr. Batzer,") as an expert witness. (Docket #131). The defendant proffers this expert to opine on whether the defendant actually shot the informant's car. The government objected, and the matter was assigned to Magistrate Judge Nancy Joseph. (Docket #137). On October 3, 2018, Magistrate Joseph issued an order granting in part and denying in part the government's motion to exclude testimony by defense expert Dr. Batzer. (Docket #162).

Magistrate Joseph held that Dr. Batzer was qualified as a ballistics expert, and could render his opinion on the inclination angle of the bullet based on his experience in shooting competitions, his Ph.D. in mechanical engineering, and his time in the military as an ordnance officer. *Id.* at 8–9. Dr. Batzer was also qualified to opine on the shape of the indentation, i.e., whether a bullet caused the indentation in the car, based on his prior work experience with metals and teaching indentation analysis, as well as his

research on crash and accident reconstruction. *Id.* at 12–13. The reliability of his methodologies would be subject to cross examination. *Id.* at 8–9, 13.

However, Magistrate Joseph held that Dr. Batzer was not qualified to testify on trace metals analysis. Specifically, Dr. Batzer had opined that because the FBI's lab report from a test of the subject car was negative for copper and lead, then this conclusively proved that a bullet could not have caused the dent. *Id.* at 9–10. Magistrate Joseph held that this was inadmissible because Dr. Batzer had no experience looking at copper and lead residue from bullets, despite his other experience with trace metal testing. *Id.* at 10. Finally, the magistrate held that Dr. Batzer was not allowed to give an opinion on who may have caused the damage to the informant's vehicle or on the defendant's credibility. *Id.* at 12, 13.

Each party submitted objections, responses, and replies to the magistrate's order, attacking all findings except whether Dr. Batzer should be allowed to give an opinion on the defendant's credibility.

## 2. LEGAL STANDARD

Federal Rule of Evidence 702, which governs the admissibility of expert testimony, states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In summary, the testimony must be helpful to the jury; the expert must be qualified by knowledge, skill, experience, training, or education; and the testimony must be reliable and fit the facts of the case. *Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 722 (E.D. Wis. 2008). Courts will evaluate expert qualifications on a case-by-case basis. *See Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010). While the court will act as a gate-keeper for expert testimony, it should be liberally admitted—"[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993).

The standard of review for pretrial, non-dispositive motions decided by a magistrate judge is whether they are "contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a) ("The district judge must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous.").

3.    **ANALYSIS**

   3.1    **Arguments Regarding the Inclination Angle of the Bullet and the Indentation Shape on the Car**

The government challenges Dr. Batzer's qualifications to testify on the inclination angle of the bullet and the indentation shape of the dent in the car, noting that he has not had extensive experience recreating shootings or testifying about bullet trajectories, he has not taken any courses or tests on the subject, he is not a member of the Association of Firearms and Toolkit Examiners, and he does not use common terminology. (Docket #168 at 6–8). They argue that he has only conducted two reconstructions involving bullet and bullet fragment trajectories, and his experience with rifle round

trajectories does not qualify him to give an opinion on the ballistics of a .40 caliber pistol. *Id.* at 8–10. They further argue that Dr. Batzer offered no evidence that his reconstruction methodology was peer reviewed, that it could be tested, or that it was generally accepted by the scientific community. *Id.* at 12–13.

The defendant argues that Dr. Batzer did use scientific methods and refers the court to the affidavits submitted by Dr. Batzer. (Docket #181 at 3-4). The defendant further argues that Dr. Batzer's education, training, and experience make him well-qualified to opine on the angle of inclination and the shape of the dent. *Id.* at 4. The government replies that Dr. Batzer nevertheless lacks superior knowledge, education, or skill in firearms and ballistics, and critiques the lack of materials available to evaluate Dr. Batzer's reconstruction of the shooting. (Docket #184).

The Court agrees with Magistrate Joseph's conclusions regarding the admissibility of Dr. Batzer's testimony. Dr. Batzer has demonstrable experience with firearms and ordnances and sufficient experience with shooting reconstruction. He also has a breadth of knowledge in these subject areas as a result of his military background, as well as his education and training in mechanical engineering, materials sciences, and metallurgy. Importantly, the reliability of Dr. Batzer's methodologies remain subject to vigorous cross-examination and ultimately evaluated against the backdrop of testimony given by the government's expert. Thus, the Court does not find the admissibility of his testimony regarding the bullet's angle of inclination, or the indentation shape on the vehicle, to be clearly erroneous or contrary to law.

### 3.2    Arguments Regarding Trace Elements Analysis

The defendant objects to the magistrate's conclusion that Dr. Batzer did not have sufficient experience to testify on trace elements, arguing that Dr. Batzer has a breadth of knowledge related to trace elements analysis. The defendant points to Dr. Batzer's reagent analysis on "a similar car door with the same type bullet strike in the same weather," which showed a positive result for copper and lead. (Docket #167 at 4). The defendant argues that this supports Dr. Batzer's opinion that a bullet should have left copper and lead traces on the car. *Id.* at 1–3. Dr. Batzer submitted a lengthy affidavit describing his expertise and the type of reagent analysis that he performed. (Docket #167-1). The defendant cites *Schuring v. Cottrell*, 244 F. Supp. 3d 721, 728 (N.D. Ill. 2017) for the proposition that a broad, foundational knowledge of the subject qualifies him to opine on a specific aspect of that subject. (Docket #167 at 3).

The government counters that Dr. Batzer conducted this trace metals test *after* the *Daubert* hearing, so the magistrate could not examine the principles or methods that were used. (Docket #182 at 8–9). The government agrees with the magistrate that Dr. Batzer's experience teaching manufacturing courses on trace element testing, as well the article that he wrote involving trace element analysis, does not give him superior knowledge, skill, expertise, or education on the subject of bullet strike residue. *Id.* at 5–6.

The defendant replies that Dr. Batzer's depth and breadth of experience in science, metallurgy, and engineering qualifies him to testify on the trace elements analysis, and argues that although anybody can perform the "cookbook reagent test used by the FBI," Dr. Batzer brings unique expertise on metal properties and their interactions with other

metals. (Docket #183 at 2). He also explains that the reason Dr. Batzer did not perform the reagent test before the *Daubert* hearing was because Dr. Batzer wanted to allow the tested car door to be outside for the same amount of time as the subject car in the FBI's test. *Id.* at 3.

Although the defendant has provided ample evidence of Dr. Batzer's knowledge of trace elements, the Court does not find Magistrate Joseph's exclusion of this testimony to be "clearly erroneous" in light of the defendant's post-*Daubert* hearing submission of new materials, as well as Dr. Batzer's lack of experience testing bullet residue. An updated trial scheduling order will follow.

Accordingly,

**IT IS ORDERED** that the parties' objections (Docket #167 and #168) to Magistrate Judge Nancy Joseph's order (Docket #162) be and the same are hereby **OVERRULED**.

Dated at Milwaukee, Wisconsin, this 7th day of January, 2019.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge